Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3065  (01 C 1115) | **DATE** | 2/13/2002 |
| **CASE TITLE** | Anderson vs. Templeton et al (00 C 3065)  Binder -v- Templeton et al  (01 C 1115) | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Defendants' motions (Docs 35-1 in 00 C 3065 & 13-1 in 01 C 1115) are granted. All other pending motions are denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | |
| | No notices required. | | FEB 1 4 2002 date docketed | |
| | Notices mailed by judge's staff. | | | 19 |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK  02 FEB 13 PM 12:44  FILED | | |
| | Copy to judge/magistrate judge. | | FEB 1 4 2002 date mailed notice | |
| SCT | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CONNIE ANDERSON, Administrator of the Estate of THOMAS GARRETT, JR., | ) ) ) | |
| Plaintiff, | ) ) ) | DOCKETED<br>FEB 14 2002 |
| vs. | ) ) ) | |
| THOMAS TEMPLETON, ARTHUR PRECI, and THE COUNTY OF LASALLE, ILLINOIS, | ) ) ) ) | 00 C 3065 |
| Defendants. | ) ) ) | |
| HEATHER BINDER, Administrator of the Estate of EDWARD TIMMONS, deceased, | ) ) ) ) | 01 C 1115 |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | DOCKETED<br>FEB 14 2002 |
| THOMAS TEMPLETON, ARTHUR PRECI, and THE COUNTY OF LASALLE, ILLINOIS, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Plaintiff Connie Anderson ("Anderson") for partial summary judgment and the motions of the Defendants for

19

summary judgment of all claims. For the reasons set forth below, we grant Defendant's motions and deny Anderson's motion as moot.

## BACKGROUND

These cases originated with the suicides of two pretrial detainees, Thomas Garrett and Edward Timmons, who were incarcerated in LaSalle County Jail in 1999 and 2000. Both men hanged themselves in their cells, Garrett after 15 days of incarceration and Timmons after only three hours.

At the time of Garrett's suicide, the intake form used to process detainees upon their arrival at the jail did not include questions involving mental health or suicidal tendencies. A prior form had contained such inquiries, but its use was discontinued approximately eight months before Garrett hanged himself by threading a bedsheet through a heating vent in his cell. Four months before his arrest, Garrett had required hospitalization as a result of a suicide attempt, but the intake officer did not elicit that information when Garrett was booked. After Garrett took his life, the questions were once again included on the form and were part of the intake procedure when Timmons was booked, several months later. During his intake, Timmons stated that he had not previously attempted suicide and that he was not at that time having thoughts of suicide. He was placed in a cell that had areas that were not always visible to jail personnel

conducting cell checks. Three hours later, in one of these blind spots, Timmons hanged himself by tying a bedsheet to an upper bunk.

The estates of the two men, through Garrett's representative Anderson and Timmons' representative Heather Binder ("Binder"), brought suit under 42 U.S.C. § 1983, alleging liability of the county sheriff, Thomas Templeton ("Templeton"); the jail superintendent, Arthur Preci ("Preci"); and LaSalle County ("the county"), collectively referred to herein as "the Defendants;" for the two deaths.[1] Neither complaint seeks injunctive relief. With the exception of the portion of Binder's complaint that pertains to Preci, the cases focus only on the liability of the municipality for its policies regarding conditions within the jail and training of jail personnel.

Anderson now moves for partial summary judgment, seeking resolution of the issues of whether conditions within the jail were intended to apply to all pretrial detainees, whether the conditions were known to all three defendants, and whether the

---

[1] Anderson's original complaint named three additional defendants and did not name the county. On December 19, 2000, we dismissed with prejudice those three defendants and any claims against Templeton or Preci in their individual capacity. Anderson then filed an amended complaint, with leave of this court. The body of the complaint reflected the change in parties, but the caption was not corrected in the complaint or any papers subsequently filed by Anderson or the Defendants, as required by Federal Rule of Civil Procedure 10(a). Neither does the docket reflect that the county was ever served with the amended complaint. However, because the county filed an amended answer and both sides have proceeded as if the parties were properly named throughout, we will overlook these procedural deficiencies.

conditions and their consequences were intended by the Defendants as punishment. The Defendants move for summary judgment of the entirety of both cases.

## LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact ." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed.R.Civ.P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); rather, "[a] genuine issue exists when the evidence is such that a reasonable jury could find for the

non-movant," Buscaglia v. United States, 25 F.3d 530, 534 (7th Cir. 1994). When reviewing the record we must draw all reasonable inferences in favor of the non-movant; however, "we are not required to draw every conceivable inference from the record–only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991).

## DISCUSSION

Both Garrett and Timmons were being detained after arrest, awaiting trial. Because neither man had been formally tried, the legal framework for analyzing their claims is found not in the Eighth Amendment proscription of cruel and unusual punishment but in the Fourteenth Amendment prohibition of any punishment at all without due process of law. Bell v. Wolfish, 99 S.Ct. 1861, 1872-73 (1979). Although the outer limits of allowable treatment have not been established for pretrial detainees, the protection they are afforded is at least as great as that given to inmates under the Eighth Amendment. Tesch v. County of Green Lake, 157 F.3d 465, 473 (7th Cir. 1998).

This is not to say that there is not significant congruence in the two lines of jurisprudence, since the situations of pretrial detainees and inmates who have been tried, convicted, and sentenced share many similarities. Several areas of overlap are directly implicated in this case. Both prisoners and pretrial detainees must be provided with basic necessities, such as food and adequate medical care. Farmer v. Brennan, 114

S.Ct. 1970, 1976 (1994); Tesch, 157 F.3d at 472. Adequate medical care includes a right to be protected from self-destructive acts. See, e.g., Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992); Hall v. Ryan, 957 F.2d 402, 406 (7th Cir. 1992). When asserting constitutional deprivations, prisoners and pretrial detainees must both show that officials acted with deliberate indifference. Estelle v. Gamble, 96 S.Ct. 285, 291 (1976); Tesch, 157 F.3d at 473. Lastly (for our purposes), both must show a direct causal link between the deliberate indifference of officials and the claimed deprivation. City of Canton v. Harris, 109 S.Ct. 1197, 1206 (1989).

At their core, both complaints place liability for the deaths on the county. Plaintiffs cannot base claims of municipal liability on allegations that individual officers acted with deliberate indifference, i.e., § 1983 liability will not lie against a municipal entity solely through *respondeat superior*. Monell v. Dep't. of Social Servs. of New York, 98 S.Ct. 2018, 2036 (1978). Instead, the municipality itself must act with deliberate indifference, usually through a policy or practice, and that act of the municipality must have a direct causal link with the constitutional deprivation. City of Canton, 109 S.Ct. at 1203; Frake v. City of Chicago, 210 F.3d 779, 781 (7th Cir. 2000); Gibson v. City of Chicago, 910 F.2d 1510, 1519 (7th Cir. 1990).

## A. Causation

Anderson and Binder cite numerous conditions within the jail that comprise the county policy upon which they base their claims of liability: overcrowding, lack of

- 6 -

sufficient medical and nonmedical staff, poor plumbing and ventilation, dangerous shelter (cells whose contents provided detainees with the tools they needed to kill themselves), failure to train and supervise officers in conducting proper cell checks, and failure to follow the Illinois County Jail Standards. This last ground is meritless; a failure to follow established procedures does not adequately show deliberate indifference to the possibility of a detainee's suicide. See Novack v. County of Wood, 226 F.3d 525, 531-32 (7th Cir. 2000).

On the remaining grounds, to defeat the Defendants' motions for summary judgment, Anderson and Binder must show a genuine issue of fact exists as to whether these conditions bore a close, direct relationship to the acts of suicide. City of Canton, 109 S.Ct. at 1206; Jutzi-Johnson v. United States, 263 F.3d 753, 756-58 (7th Cir. 2001); Frake, 210 F.3d at 781. However, their statements of facts and the arguments they advance are couched in terms of rather remote possibility, not substantial probability. The causal link between an alleged constitutional deprivation and official action must be more concrete. See Jutzi-Johnson, 263 F.3d at 755 (holding that plaintiff must show that detainee's suicide would not have occurred if staff had acted responsibly and must show that the detainee's act was an actual and foreseeable consequence of the acts or omissions of the staff). Anderson's theory of causation is that the conditions of the jail raise the stress levels of some inmates enough that the added strain might be a factor in that person's ultimate decision to commit suicide. Being in jail is clearly a stressful

experience, for many reasons other than the environmental specifics, and suicide rates are higher for detainees than for other populations. See Boncher v. Brown County, 272 F.3d 484, 486 (7th Cir. 2001). However, such a distant indirect connection is insufficient to establish legal causation. To conclude otherwise would allow anyone subjected to the admittedly heightened stress of being incarcerated to bring suit against cities or counties for any reaction they had that was somehow related to the stress of their experience. As the Supreme Court has cautioned, connections that are so tenuous and speculative would lead to unprecedented and unwarranted liability. City of Canton, 109 S.Ct. at 1206.

## B. Deliberate Indifference

Even if Anderson and Binder could properly show causation, the record before us does not demonstrate that the city or Officer Preci acted with deliberate indifference. Deliberate indifference is the proper standard to use to assess Fourteenth Amendment due process claims related to risk of suicide. Tesch, 157 F.3d at 474, 475; Estate of Cole v. Fromm, 94 F.3d 254, 259 (7th Cir. 1996). To act with the recklessness necessary to establish deliberate indifference, "a person must 'consciously disregar[d]' a substantial risk of serious harm." Farmer, 114 S.Ct. at 1980. Officials who are aware of a substantial risk of serious injury to a particular detainee but who fail to make an appropriate attempt to avert the danger act with deliberate indifference. Frake, 210 F.3d at 782.

Anderson emphasizes the lack of questions regarding mental health and suicide on the intake form used at the time of Garrett's arrest to show deliberate indifference. Her emphasis is unwarranted, however, since the right to basic medical care does not include the right to be screened for suicidal tendencies. Belcher v. Oliver, 898 F.2d 32, 34-35 (4th Cir. 1990). In addition, we have no objective evidence that demonstrates that Garrett or Timmons displayed to prison officials a particularized need for suicide protection before either of them actually acted. See id. at 35. Anderson's statement of facts refers to suicide attempts or other episodes related to detainee suicide for Kale Green, Deborah King, Randy Spertzel, Kenneth Hollenbeck, and Joseph Hacker prior to Garrett's suicide, and Binder adds that Garrett's suicide should have spurred officials to be more careful with Timmons, but neither plaintiff shows that officials were aware of a heightened risk that specifically applied to either Garrett or Timmons prior to their deaths. Evidence of a threat to a particular detainee is crucial to establishing deliberate indifference and resulting liability. See, e.g., Boncher, 272 F.3d at 488; Frake, 210 F.3d at 782; Estate of Cole, 94 F.3d at 261; Belcher, 898 F.2d at 35 (collecting cases); State Bank of St. Charles v. Camic, 712 F.2d 1140, 1146 (7th Cir. 1983).

In fact, Anderson does not argue that jail personnel ignored suicide-related problems; paragraph 35 of her statement of facts recognizes that they "dealt with suicidal problems as they came up." The thrust of her argument, then, seems to be that officials did not deal with problems quickly enough or effectively enough. Binder's

contentions follow a similar vein, questioning the sufficiency of the procedures used to perform cell checks, not that cell checks or other methods of detection of suicidal tendencies were not performed at all. As a court, removed from the realities of the day-to-day operation of jails and prisons, we are neither qualified nor permitted to substitute our judgment of the most effective way for jail officials to carry out their duties. See, e.g., Bell, 99 S.Ct. at 1874, 1878-79; Boncher, 272 F.3d at 487; Frake, 210 F.3d at 782. The practices Anderson and Binder object to, while not stellar examples of detainee care, do not amount to deliberate indifference.

## C. Qualified Immunity

Finally, we address the issue of Preci's assertion of qualified immunity in the suit brought by Binder. Preci is the only party being sued in his individual capacity, rather than his official capacity; he alone may advance the defense. See, e.g., Kentucky v. Graham, 105 S.Ct. 3099, 3105-06 (1985); Walker v. Snyder, 213 F.3d 344, 346 (7th Cir. 2000). Qualified immunity applies to public officials sued in their individual capacity if (1) the plaintiff has stated a viable claim of deprivation of constitutional rights and (2) the rights involved were clearly established such that a reasonable official would realize that the actions taken were unlawful. Morrell v. Mock, 270 F.3d 1090, 1094 (7th Cir. 2001). The Defendants' statement of facts, filed in accordance with Local Rule 56.1, establishes that at the time of Timmons' suicide, officers performing cell checks had the discretion to actually enter the cell block or to just look through

windows on the exterior. In addition, officers performing a cell check entered both their initials and the time of the check on the log sheet.[2] In addition, intake officers at the time of Timmons' arrest were again asking questions regarding mental health and suicidal tendencies. These facts, as well as the foregoing discussion, establishes that Preci, as the superintendent in charge of devising and implementing cell check procedures, was not deliberately indifferent to the suicide risk within the jail. He therefore did not violate Timmons' constitutional rights and is entitled to qualified immunity.

In closing, we pause to note that the fact that the county is not legally liable for the deaths of these two men in no way diminishes the tragedy of their deaths, nor does it justify the defendants' use of glib catch phrases such as "if it ain't broke, don't fix it" in reference to the operating procedures in the LaSalle County Jail. Such rhetoric has nothing to do with advocacy and does nothing to further the defendants' position. It is

---

[2] In her response to the summary judgment motion, Binder disputes the accuracy of these facts. However, Local Rule 56.1(b) states that a party opposing a summary judgment must respond to each paragraph of the moving party's statement of facts as well as providing a statement of any additional facts that require the denial of the motion. All material facts not controverted by the opposing party in this manner will be deemed admitted. Binder's only response to the Defendants' 56.1 statement of facts does not follow the format prescribed by this rule; it is styled as though it were a statement of facts in support of a summary judgment motion that Binder has not filed. At best, we can construe this only as a statement of additional facts. Because Binder has not specifically controverted, in responses to each of the numbered paragraphs of the Defendants' 56.1 statement, the facts advanced by the Defendants, those facts are deemed admitted for the purposes of the motion against Binder.

at best in extraordinarily bad taste and at worst a display of callous indifference in the nonlegal sense of that word. We would hope that the defendants' idea of a broken system would not require that jails be littered with cyanotic bodies before someone realizes something is wrong.

## CONCLUSION

Because neither Anderson nor Binder can establish that the Defendants acted with deliberate indifference or that their actions caused the suicides, we grant the Defendants' motions for summary judgment. Anderson's cross-motion is accordingly denied as moot.

_____
Charles P. Kocoras
United States District Judge

Dated: _____February 13, 2002_____